UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
ALBERT J. SLINEY,                      )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        Civil Action No. 07-1425 (PLF)
                                       )
FEDERAL BUREAU OF PRISONS,             )
                                       )
            Defendant.                 )
_____)


MEMORANDUM OPINION

            This matter is before the Court on defendant's renewed motion for summary

judgment.  The motion will be granted.


I.  BACKGROUND

            In August 2003, plaintiff submitted a request to the Federal Bureau of Prisons

("BOP") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for copies of tape

recordings of telephone calls made to a phone number ending in the digits 4419 on July 5 and

July 6, 2003.  Compl. at 2.  In October 2003, he requested copies of telephone calls made to a

phone number ending in the digits 6157 on May 8, 2003 and June 17, 2003, and to a phone

number ending in the digits 6013 on October 4, 2003.  *Id.*  Plaintiff "was not able to provide . . .

waivers" from the other party or parties to these telephone conversations.  *Id.*  So, in the

alternative, in May 2004 he requested "his portion of the July 5, 2003, July 6, 2003 and October

4, 2003, telephone conversations."  *Id.* at 3.

Defendant initially assessed a fee of $60.00 to process plaintiff's request.  *See* Def.'s Mot. for Summ. J., October 29, 2007 Declaration of Ron Hill ("Hill Decl.") ¶ 2.  Because the money order was made payable to the BOP instead of to the Treasury of the United States, *id.*, the BOP returned the money order to plaintiff on September 20, 2005.  *Id.* ¶ 3.  The BOP "mailed [the money order] directly to Plaintiff via regular mail[,] . . . [and] there is no way to track or verify Plaintiff's receipt of the money order."  Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J., January 28, 2008 Declaration of Ron Hill ("2d Hill Decl.") ¶ 3.  The BOP had "no record[] indicating [that] Plaintiff ever responded to the September 20, 2005 letter."  Hill Decl. ¶ 4.  "[A]fter learning that Plaintiff [was] still interested in the tapes, the BOP decided to provide [them] without payment."  *Id.*  On or about October 26, 2007, the BOP mailed plaintiff a tape of these redacted conversations.  *Id.*

Plaintiff acknowledged receipt of "one (1) cassette tape with three (3) separate conversations on it which are of the calls requested."  Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp'n") at 2.  After listening to the recording and after his "review of the notes made the day of those conversations," however, plaintiff contended "that most of his conversation has been excluded as well."  *Id.*  He asserted that the recordings do not reflect "Plaintiff's complete conversation to his portion of that request" because the tape omits "every thing Plaintiff repeated from what was said from the opposite party."  Aff. in Support of Pl.'s Opp'n ¶ 2.

The BOP responded with an explanation of its process for preparing a redacted recording of a telephone conversation.  It explained that:

> the review and segregation of the telephone tapes for calls made from
> the old reel-to-reel telephone monitoring system is a timely and
> tedious process.  After a taped cassette copy of the entire conversation

> is received from the prison where the call was made, the process requires that each speaker's voice be identified and then noted by writing down the stop and start points when each person is talking using a numerical counter.  Using these start and stop points, the releasable portions are then recorded separately onto a new cassette tape.  While the process is not entirely precise, the starting and stopping points are within a fraction of a second of when the person, whose voice we are releasing, speaks.  This means that parts of a word may be cut off at the end of a statement by that person or may be missing at the beginning of a statement by that person.

2d Hill Decl. ¶ 2.  The declarant "listened to a copy of the tape released to Plaintiff," *id.*, that is, a tape of the redacted telephone conversations.  *See* Hill Decl. ¶ 4 & Attach. (October 27, 2007 letter).  He determined that, "[e]xcept for a few words where both parties were speaking at the same time, there were no entire portions of Plaintiff's conversation left out or redacted."  2d Hill Decl. ¶ 2.  Because the declarant did not state that he prepared the redacted tape for release to plaintiff or that he had listened to a tape of the entire telephone conversations, *see id.*, the basis for his conclusion that "no entire portions of Plaintiff's conversation were left out or redacted," *id.* ¶ 3, was unclear.  The Court therefore could not conclude that the defendant had met its obligations under the FOIA and denied defendant's motion for summary judgment without prejudice.  *Sliney v. Fed. Bureau of Prisons*, 577 F. Supp. 2d 113, 115 (D.D.C. 2008).

The BOP has filed a renewed motion for summary judgment with a third declaration from Ron Hill which clarifies that the declarant "ha[s] been the only FOIA staff involved in the processing of these calls."  Def.'s Renewed Mot. for Summ. J. ("Def.'s Renewed Mot."), September 11, 2008 Declaration of Ron Hill ("3d Hill Decl.") ¶ 3.  The processing of the tape recordings "required [him] to listen to the full, non-redacted versions of these calls over and over again trying to mark the start and stop points of each person[']s voice."  *Id.*  Only after

3

noting these start and stop points did the declarant begin "the process of recording only

Plaintiff's voice onto a new cassette tape." *Id.* He took "[g]reat care . . . to be as precise as

humanly possible by manually pushing the record button at the locations noted where Plaintiff

began talking and pushing the stop button at the locations where Plaintiff stopped talking." In

addition, the declarant "listened to the file copy of the tape released to Plaintiff and compared it

to the full length originals, along with the notes of the start and stop points." *Id.* ¶ 4. Only at

points where both parties were speaking were portions of the conversations omitted or redacted.

*Id.*

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court grants a motion for summary judgment if the pleadings, the discovery

and disclosure materials on file, together with any affidavits or declarations, show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a

genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[A] material

fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party" on an element of the claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  Factual assertions in the moving party's affidavits or declarations may be accepted

as true unless the opposing party submits his own affidavits or declarations or documentary

evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).  In opposing a

summary judgment motion, a party may not "replace conclusory allegations of the complaint or

answer with conclusory allegations of an affidavit," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

In a FOIA case, the Court may grant summary judgment based on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

*B.  Redacted Tapes*

Defendant again moves for summary judgment on the ground that no genuine issue of material fact remains as to its full compliance with the FOIA and that it therefore is entitled to judgment as a matter of law. Def.'s Renewed Mot. at 1. Specifically, because the BOP has released all reasonably segregable records, that is, a tape of the redacted telephone conversations, defendant argues that this action should be dismissed as moot.

Plaintiff maintains that the BOP "has in fact FAILED to comply with Plaintiff's request," and that, if it had "timely complied with Plaintiff's request in the first place[,] this

matter would have never been made part of the District Court Civil Docket."  Pl.'s Repeated Resp. to Def.'s Mot. for Summ. J. [#23] at 2 (capital letters in original).  Absent from plaintiff's submission is any showing to establish a genuine issue of material fact as to the BOP's compliance.  His bare assertion that "the truth and facts are not as Defendant's [sic] have presented them," *id.* at 1, is insufficient.

"[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform."  *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).  The BOP has demonstrated that it has released to plaintiff a tape of three redacted telephone conversations at no cost to plaintiff. It therefore has complied in full with its obligations under the FOIA.

### C.  Plaintiff's Demand for Costs

The FOIA permits a district court to "assess against the United States  . . . other litigation costs reasonably incurred in any case . . . in which the [plaintiff] has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  A party substantially prevails if he "has obtained relief through either . . . a judicial order, or an enforceable written agreement or consent decree[,] or . . . a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  The latter provision "essentially codifies the so-called 'catalyst theory' for determining a fee request against the United States, under which a plaintiff is deemed to have 'substantially prevailed' for purposes of § 552(a)(4)(E) if the 'litigation substantially caused the requested records to be released.'"  *N.Y.C. Apparel F.Z.E. v. United States Customs and Border Protection Bureau*, 563 F. Supp. 2d 217, 221 (D.D.C. 2008)

6

(quoting *Chesapeake Bay Found. v. Dep't of Agric.*, 11 F.3d 211, 216 (D.C. Cir. 1993)); *see*

*Zarcon, Inc. v. Nat'l Labor Relations Bd.*, No. 06-3161-CV-S-RED, 2009 WL 4960224, at *2

(W.D. Mo. Mar. 25, 2008).  "The catalyst theory assumes that a voluntary or unilateral change in

an agency's position is induced by the complainant's lawsuit." *Wildlands CPR v. United States

Forest Serv.*, 558 F. Supp. 2d 1096, 1098 (D. Mont. 2008).

　　　　The decision to award attorneys' fees and costs is left to the Court's discretion.

*See Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 705-06 (D.C. Cir. 1977)

(commenting that the Section 552(a)(4)(E) "contemplates a reasoned exercise of the courts'

discretion taking into account all relevant factors").  In making this decision, the Court considers

"(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the

nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's

withholding of the requested documents." *Davy v. Central Intelligence Agency*, 550 F.3d 1155,

1159 (D.C. Cir. 2008) (citations omitted).  "No one factor is dispositive, although the [C]ourt

will not assess fees when the agency has demonstrated that it had a lawful right to withhold

disclosure." *Id.*

　　　　Plaintiff demands an award of $535.36 for litigation costs, arguing that the BOP's

"willful and arbitrary conduct . . . forced [plaintiff] to pursue a civil action in this situation,"

which caused him "to bear significant personal expenses and hardships in litigating this civil

action."  Pl.'s Resp. to Def.'s Mot. for Summ. J. [#14] at 4; *see also* Aff. in Support of Pl.'s

Resp. to Def.'s Mot. for Summ. J. ¶ 3.[1]  He maintains that the BOP "could have prevented and

---

　　　　[1]　　Plaintiff demands an award of $535.36 for the court's filing fee ($350), "[a]ll via-certification transactions by Plaintiff, only to the court" ($57.46), three typewriter ribbons

(continued...)

resolved this situation through timely correspondence long before civil litigation was necessary . . . and [it] cannot now contend that Plaintiff is not entitled to be compensated for the expenses and damages in litigating this unnecessary civil action." Pl.'s Repeated Resp. to Def.'s Mot. for Summ. J. at 3.  The BOP asserts, without explanation, that plaintiff has not substantially prevailed, "and thus, his claims for costs are premature."  Def.'s Renewed Mot. at 5-6.

The record reflects that the BOP did not process plaintiff's FOIA request until after this suit was filed and only "after learning that [p]laintiff [was] still interested in the tapes." Hill Decl. ¶ 4; *see* 2d Hill Decl. ¶ 3.  The BOP's actions reasonably can be considered "a voluntary or unilateral change in position by the agency" after a lawsuit was filed.  5 U.S.C. § 552(a)(4)(E)(ii).  An award of costs is warranted, however, only if plaintiff's claim is determined not to be "insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).

The Court presumes that plaintiff filed this action in order to force the BOP to release redacted recordings of his portion of three telephone conversations, and that the recordings were intended for plaintiff's personal use only.  It does not appear that plaintiff derives a commercial benefit from the recordings, and it does not appear that the public benefits in any way from their release.  The BOP has shown that its initial refusal to release the taped conversations was reasonable: it had not received payment in advance for processing plaintiff's FOIA request, and regulations authorize it to "collect all applicable fees *before* sending copies of requested records."  28 C.F.R. § 16.11(a) (emphasis added).  For these reasons, the Court concludes that plaintiff's claim is insubstantial.  *See Judicial Watch, Inc. v. Bureau of Land*

---

[1](...continued)
($50.35), photocopies ($17.55), and "the $60.00 dollars which was never forwarded to Plaintiff by [the BOP]."  Pl.'s Resp. to Def.'s Mot. for Summ. J. at 4.

*Mgmt.*, 562 F. Supp. 2d 159, 172-74 (D.D.C. 2008) (finding that a not-for-profit organization's claim was substantial because it attempted to expose "the precise connection between three high-ranking elected officials and real estate developer [as such information] surely would aid individuals in making a most vital political choice" and because its "sole goal in obtaining the requested records was to investigate potential official misconduct" (internal quotation marks omitted)); *cf. Wildlands CPR v. United States Forest Serv.*, 558 F. Supp. 2d at 1101 (concluding that the public interest is served where the requester "brought suit under FOIA to obtain information from which it could determine whether [the Forest Service] was in compliance with the environmental policies the Congress has established through the enactment of laws [which it is] legally obligated to implement and enforce," and that this factor weighs in favor of awarding the requester  attorneys' fees and costs).  Plaintiff's demand for an award of costs will be denied.

### III.   CONCLUSION

The Court concludes that the BOP has demonstrated its compliance with the FOIA and that it is entitled to judgment as a matter of law.  Accordingly, the Court will grant its renewed motion for summary judgment.  An Order consistent with this Memorandum Opinion will be issued on this same day.


/s/_____
PAUL L. FRIEDMAN
DATE: June 18, 2009                    United States District Judge